### HANNAH S. BRICK v. ROBERT CAMPBELL.

1.  The payee of two promissory notes agreed with the maker of the notes, before they had matured, that she would not sue him for the amount thereof so long as he remained the assignee of her husband. *Held*, that this agreement postponed the due-day of the notes, and constituted a legal defence to an action upon them brought by the payee while the maker was still assignee.
2.  The failure of the defendant to prove the statutory authority of the plaintiff, a married woman, to contract in a sister state, will not be deemed a sufficient reason for denying to the defendant a new trial on a rule to show cause, when it appears that he has a valid defence and that his failure was the result of mere inadvertence, the plaintiff having raised at the trial no question as to her ability to contract.

On contract. On rule to show cause why a new trial should not be granted.

Argued at November Term, 1887, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *W. P. Wilson* and *A. V. Schenck.*

For the defendant, *J. D. Bedle.*

The opinion of the court was delivered by

DIXON, J.   This action was brought upon two promissory notes made by the defendant to the plaintiff, one dated Decem-

Brick v. Campbell.

ber 29th, 1879, for $3500, payable three years after date; the other dated December 29th, 1881, for $3000, payable two years after date.

The defence interposed was that the plaintiff, by her written contract of December 15th, 1882, had agreed with the defendant to hold and not part with said notes, and not to ask, demand or sue for the same or any part thereof so long as the defendant should remain the assignee of the plaintiff's husband.

The suit was brought while the defendant was still such assignee.

The plaintiff contended that the agreement was obtained by fraud and duress, and that, even if valid, it did not constitute a defence to the action.

At the trial before the Middlesex Circuit, without a jury, the justice found in favor of the plaintiff, but allowed the rule to show cause, on which the matter is now before us.

The allegation of fraud and duress has no support in the testimony.

The claim that the agreement does not constitute a defence deserves more consideration.

This claim is based upon the doctrine that an agreement to refrain from suing upon a right of action for a limited time, will not, in law, bar an action during that time, but will only form the basis of a suit for damages in case of its violation. *Deux* v. *Jefferies, Cro. Eliz.* 352.

The legitimate scope and effect of this doctrine will be best ascertained by recurring to the principles whence it sprang. It is the outgrowth of what Baron Parke, in *Ford* v. *Beech*, 11 *Ad. & E.* (*N. S.*) 866, called "a very old and well-established principle of law, that the right to bring a personal action, once existing, and by act of the party suspended for ever so short a time, is extinguished and discharged and can never revive," and of the cardinal rule for the interpretation of contracts, that the real intention of the parties as expressed in the whole of their agreement should be effectuated. Under the guidance of this latter rule, the courts discovered, in an

agreement not to sue for a limited time, a manifest intention that the right to sue should not be forever surrendered, and in order to effectuate this purpose they were constrained, because of the principle first stated, to hold that the legal right of action was not suspended even for the limited period. *Ford* v. *Beech*, 11 *Ad. & E.* (*N. S.*) 852; *Winans* v. *Huston*, 6 *Wend.* 472. Hence it became the general doctrine that an agreement, in terms, to suspend a right of personal action temporarily, could not be pleaded in bar of the suit, but must be enforced only in some mode consistent with the continued existence of the right of action. That this doctrine was, however, applied only as a means of upholding the intention of the contracting parties, is further shown by the exception to it, that if, besides agreeing not to sue for a limited time, the party also agrees that if he does so, the right of action shall be discharged or the agreement shall be pleadable in bar, then such a contract can be set up as a bar to the suit brought in violation of it. 1 *Roll. Abr.* 939, *tit.* "*Extinguishment;*" *White* v. *Dingley*, 4 *Mass.* 433. By such language the design actually to suspend the right of action for a time is too clearly expressed to permit of any implication against it. So, also, in accordance with the general judicial purpose to carry out the real intention of contracting parties, it is held that although a contract not to sue at all may usually be pleaded in bar (*Hodges* v. *Smith*, *Cro. Eliz.* 623), yet if it be made with only one of two or more joint promissors, it shall not constitute a bar, because that would defeat the whole right of action, when it was obviously intended to preserve it as to some at least. *Dean* v. *Newhall*, 8 *T. R.* 168; *Couch* v. *Mills*, 21 *Wend.* 424; *Line* v. *Nelson*, 9 *Vroom* 358. And this is the law, notwithstanding the ancient rule that a technical release of one discharges all.

Applying these principles, then, to the case in hand, it appears that the plaintiff, in making the agreement set up in defence, had a two-fold intention—first, not to sue upon her notes while the defendant remained assignee of her husband; second, not to be deprived of the right to sue upon them after

Brick v. Campbell.

he ceased to be assignee. It also appears that the circum-
stances in which this agreement was made were such that the
technical rule, with regard to the suspension of existing rights
of action, will not interfere with the enforcement of both these
designs;.for at the date of the contract the plaintiff had no
right of action upon her notes; they were not yet matured.
Her evident purpose was not to suspend an existing right of
action, but to postpone the time when such a right should.
arise. There is no legal obstacle in the way of giving full
effect to a purpose of this nature. All that is necessary is to
regard the terms of the later agreement as substituted for the
terms of the earlier one, so far as there is any inconsistency,
and then to enforce the contract thus indicated. It is the
frequent practice of the courts thus to amalgamate two con-
tracts made between the same parties touching the same sub--
ject matter. *Greig* v. *Talbot*, 2 *B. & C.* 179; *Ford* v. *Camp--
field*, 6 *Halst.* 327; *Cox* v. *Bennet*, 1 *Green* 165; *Stryker*
v. *Vanderbilt*, 1 *Dutcher* 482. . The like rule obtains in New
York, where the notes and agreement now in controversy
were made. *Keating* v. *Price*, 1 *Johns. Ch.* 22; *Dodge* v.
*Crandall*, 30 *N. Y.* 294. In the last-named case it is said
" that the time of the payment of a simple contract debt may
be thus extended, so that no action will lie for its recovery
until the expiration of the extended time, when the agreement
to extend is founded on a good consideration, is too well set--
tled to admit of question. * * * In such a case the sub-
sequent agreement operates upon the instrument where the
demand is evidenced by writing and becomes part of it, so
·that the obligation, instead of becoming due according to its
terms, is only due at the expiration of the extended time, and
until that happens no action can be maintained upon the
instrument."

This view is not at all opposed by *Webb* v. *Spicer*, 13 *Q.
B.* 894, and *Salmon* v. *Webb*, 3 *H. L. Cas.* 510, for they were
decided upon the ground that the contract set up by the de-
fendant was not legally capable of incorporation with the note
sued on, because it was made between different parties. *Hoff-*

*man* v. *Brown,* 1 *Halst.* 429, and *Dow* v. *Tuttle,* 4 *Mass.* 414, do, however, seem to be out of harmony with it; but perhaps they may be explained upon the notion that as the two repugnant instruments were contemporaneous, the parties could not have intended that one should override the other or that they should be enforced together as one contract, and therefore the courts would enforce one without regard to the other. Notwithstanding these decisions, this court, in *Allen* v. *Coxe,* 2 *Halst.* 89, and *Harwood* v. *Hildreth,* 4 *Zab.* 51, treated such contemporaneous instruments as parts of a single agreement which was to be judicially enforced according to the actual intention expressed by all the writings taken together. This is the more reasonable doctrine.

But whatever difficulty Hoffman *v.* Brown and Dow *v.* Tuttle may suggest as to contemporaneous stipulations which are inconsistent with each other, there is no difficulty in attributing to parties an intention to modify by a later contract the terms on which they had previously agreed, and that is all that need be done for present purposes.

So treated, the contracts of the defendant to pay the sums mentioned in the notes at the times therein specified became, on the execution of the agreement of December 15th, 1882, a contract to pay said sums on his ceasing to be the assignee of the plaintiff's husband. Such an arrangement is entirely accordant with all legal rules, and therefore should be carried into effect by the courts. That will be done by denying the plaintiff's right to sue while the defendant remains assignee, because the money has not yet become due, and by maintaining her right to sue afterwards when the due-day shall have arrived.

According to these views the action was prematurely brought, and the plaintiff should have been non-suited.

The plaintiff further urges that a new trial should not be granted, because at the time of making the agreement which is relied on by the defendant she was a married woman, and therefore at common law incapable of contracting, and the

defendant did not prove any enabling statute prevailing in New York where the agreement was made.

The point thus presented does not appear to have been taken on the trial, and doubtless to this is due the inadvertence of the defendant's counsel. We are persuaded that by statute married women in New York are empowered to make contracts relating to their separate estate (*Nash* v. *Mitchell*, 71 *N. Y.* 199), and of course such statute can be readily proved. Under these circumstances this omission should not defeat a substantial defence.

Let the rule be made absolute.